UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEBORAH ASHCRAFT,

                                        Plaintiff,

            v.                                          7:11-CV-139
                                                        (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

LAWRENCE D. HASSELER, ESQ., for Plaintiff
SUSAN J. REISS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636

(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General

Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff filed her first application for Social Security Disability (DIB) and

Supplemental Security Income Benefits (SSI) on June 23, 2004, claiming that she

became disabled on August 28, 2003. (Transcript (T) 120-22, 285-87), The application

was denied initially on August 9, 2004. (T. 93-98, 283). Plaintiff requested a hearing

that was held before Administrative Law Judge (ALJ) Lawrence E. Shearer. (T. 38-

90).  Plaintiff and a vocational expert testified at the hearing, and on June 21, 2005,

ALJ Shearer issued a decision denying plaintiff benefits. (T. 27-37).  The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 7, 2005.  (T. 5-7).

Plaintiff filed a federal civil action, challenging the Commissioner's October 7, 2005 decision.  On June 9, 2008, Magistrate Judge David E. Peebles recommended reversing the Commissioner's decision and remanding the case to the agency for further evaluation of plaintiff's pain and residual functional capacity (RFC). *Ashcraft v. Commissioner of Social Security*, No. 7:05-CV-1342. (T. 337-71).  On July 28, 2008, Magistrate Judge Peebles's recommendation was adopted in its entirety by the Honorable Gary L. Sharpe, United States District Judge, and the case was remanded to the Commissioner. (T. 335-36).

On June 28, 2006,[1] while plaintiff's federal civil action was pending, she filed new applications for DIB and SSI benefits. (T. 445-47).  On December 28, 2007, ALJ Robert Gale issued a fully favorable decision, finding that plaintiff was disabled, beginning August 11, 2005.[2] (T. 320-28).  The Appeals Council considered both the federal court remand and ALJ Gale's favorable decision in the same order. (T. 376-77).  The Appeals Council affirmed ALJ Gale's decision, finding that plaintiff was disabled beginning August 11, 2005, but sent the plaintiff's file to ALJ Elizabeth Koennecke, pursuant to the federal court remand for "further development for the

---

[1] The actual application is dated August 2, 2006, however, plaintiff "protectively filed" her applications on June 28, 2006. (T. 307; ALJ Koennecke's Opinion at n.1).

[2] While plaintiff's applications were before ALJ Gale, plaintiff's counsel "amended" plaintiff's alleged onset date to August 11, 2005, without prejudice to further consideration of an earlier onset date.

period prior to August 10, 2005." (T. 377).

On December 2, 2009, ALJ Koennecke held a hearing, at which plaintiff testified, accompanied by counsel. (T. 722-38).  On January 6, 2010, ALJ Koennecke issued an unfavorable decision, finding that, between August 28, 2003 and August 10, 2005, plaintiff was able to return to her previous "light" work and was not "disabled" for purposes of Social Security. (T. 307-16).  ALJ Koennecke's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 22, 2011. (T. 294).  Plaintiff has timely filed this federal action, challenging the Commissioner's decision.

## II.    PLAINTIFF'S CONTENTIONS

This action involves only the period between August 28, 2003 and August 10, 2005 because plaintiff has been found disabled as of August 11, 2005.  Plaintiff makes the following arguments in support of reversal of the Commissioner's decision.

(1)    The Commissioner failed to properly consider the medical evidence in determining that plaintiff was not disabled as of August 28, 2003, the date of her traumatic injury.  (Pl.'s Br. at 11-15) (Dkt. No. 11).

(2)    The Commissioner failed to properly evaluate plaintiff's complaints of pain and other disabling symptoms. (Pl.'s Br. at 15-17).

(3)    The Commissioner failed to properly determine plaintiff's residual functional capacity (RFC). (Pl.'s Br. at 18-22).

Defendant argues that the ALJ's decision is supported by substantial evidence and asks that this court affirm the decision of the Commissioner and dismiss the complaint. (Dkt. No. 14).  For the following reasons, this court agrees with plaintiff

3

and will recommend reversal for calculation of benefits.

## III.   APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering

4

> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may

not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence.

*Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine whether

substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the

decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV.   FACTS

On August 28, 2003, plaintiff injured her neck at work while carrying a 75 pound tray of meat.  The plaintiff's counsel has carefully outlined the facts in his memorandum of law. (Pl.'s Br. at 2-11).  Defense counsel has incorporated by reference the evidence set forth in ALJ Koennecke's decision "as well as any summary of the evidence provided by plaintiff in her brief with the exception of any inferences, arguments, or conclusions asserted by plaintiff." (Def.'s Br. at 2; Dkt. No. 14).  Thus, this court will adopt the facts as stated in plaintiff's brief, with any exceptions or additions as noted in the analysis below.

## V.   THE ALJS' DECISIONS

### A.   ALJ Gale (Favorable Decision)

ALJ Gale found that plaintiff had several severe impairments: degenerative disc disease in the cervical and lumbar spine, myofacial pain syndrome, bilateral carpal tunnel syndrome, and chronic migraine headaches. (T. 322).  ALJ Gale cited plaintiff's December 2004 MRI, showing that she had mild degenerative disc disease, predominantly at C4-5 and C5-6, without significant compromise to the central canal or neural foramina. (T. 322).  EMG and nerve conduction studies, also performed in December of 2004 showed "moderate compressive neuropathy of the median motor and sensory nerves across the wrists bilaterally and evidence of mild C5-6 root irritation on the right side." (T. 322).

After a review of the medical evidence, ALJ Gale determined that plaintiff had the RFC to lift, carry, push and pull less than 10 pounds occasionally, sit six hours and stand and walk less than two hours in an eight hour day. (T. 324).  Plaintiff could only occasionally climb, stoop, kneel, crouch and crawl and only occasionally reach and finger. (*Id.*)  She would have to avoid all exposure to hazards such as machinery and heights and is limited in her ability to attend and concentrate. (*Id.*)

In making this RFC determination, ALJ Gale gave great weight to Dr. Hemangi M. Sane, one of plaintiff's treating physicians, who stated on August 11, 2005, that plaintiff should avoid lifting, carrying, pushing, pulling, walking, climbing, stooping, bending, and bus travel. (T. 325).  Dr. Sane also stated that plaintiff had some limitations standing and sitting. (T. 325).  ALJ Gale also considered a report authored

by Dr. Ayaz Khan on June 22, 2006, stating that plaintiff might not be able to work productively in any capacity, due to her "muofascial pain sydrome, chronic degenerative disc disease of the spine and radicular symptoms." (T. 325).  Because Dr. Khan was also a treating physician, his opinion was given great weight. (*Id.*)

ALJ Gale gave limited weight to consultative physician Dr. James Naughten, D.O., who saw plaintiff only once and found that plaintiff had no limitations seeing, hearing, talking, sitting or standing, and moderate limitations to walking, climbing stairs, pushing, pulling and reaching. (T. 325).  Dr. Naughton also found that plaintiff "should be able to lift, carry and handle objects of a moderate degree of weight on an occasional basis." (*Id.*)  ALJ Gale found plaintiff's complaints of pain "generally credible." (T. 326).  ALJ Gale found that plaintiff was not able to perform her past relevant work.  Additionally, because of the limitations in plaintiff's manual dexterity, the range of sedentary work that she would be capable of doing would be eroded to the point where she could not meet the demands of sedentary work on a regular basis, rendering her disabled as of the "amended" August 11, 2005 onset date. (T. 325, 328).

### B.    ALJ Koennecke (Unfavorable Decision)

ALJ Koennecke found that from August 28, 2003 until August 10, 2005, plaintiff had only two severe impairments: mild degenerative disc disease of the cervical and lumbar spine. (T. 310).  ALJ Koennecke stated that "[g]iven how minimal the clinical findings are during the period at issue, the claimant is given the benefit of the doubt that her mild degenerative disc disease of the cervical and lumbar spine is 'severe.'" (*Id.*).  ALJ Koennecke found that plaintiff's chonic migraine headaches

were not severe because "no treating physician has provided any physical limitations pertaining to the claimant's reported symptoms, . . . [and] in terms of treatment, she had only been prescribed medication" with "no additional testing . . . ordered." (T. 311).

ALJ Koennecke found that during the period in question, plaintiff could perform a full range of "light" work and that plaintiff's complaints concerning the intensity, persistence, and limiting effects of pain were not credible. (T. 312). In making this determination, ALJ Koennecke gave less weight to Dr. Sane's findings and "great" weight to orthopedic physician, Dr. Dwight Campbell, who examined plaintiff on October 16 and November 20, 2003, and who found "only a subtle cervical scoliosis without significant signs of major degenerative disc disease. (T. 313, 315). The ALJ quoted Dr. Campbell as stating that "there were no specific findings to keep the claimant out of the work place." (T. 314). ALJ Koennecke cited a contemporaneous x-ray of plaintiff's shoulder, showing only mild calcification and slight curving. (*Id.*)

The ALJ reviewed neurologist, Dr. Abdul Latif's medical records, together a report by David Tiersten, M.D., an agency consulting physician, and reports authored by Dr. Ayaz Khan, plaintiff's treating physician. (T. 313-15). The ALJ discounted Dr. Sane's RFC, restricting plaintiff to less than sedentary work, because, when she rendered her opinion in February of 2005, Dr. Sane had only been treating plaintiff for 15 days. (T. 314-15). ALJ Koennecke discounted Dr. Tiersten's opinion that plaintiff could not engage in prolonged sitting, standing, walking, carrying, or bending because

he only examined the plaintiff once, and "his diagnosis of herniated cervical and lumbosacral . . . disks is inconsistent with his own report." (T. 315).  The ALJ gave little weight to plaintiff's chiropractor, Dr. Walsemann because he is not an acceptable medical source, and his opinion that plaintiff could only lift ten pounds and had "some" limitations for standing and sitting, was inconsistent with the "evidence of record which shows only mild limitations." (T. 315).

The ALJ found that plaintiff could return to her past relevant work as a school cashier and a short order cook. (T. 315).  The ALJ found that, based on the testimony of the vocational expert at the plaintiff's first[3] hearing and upon the Dictionary of Occupational Titles, these jobs were in the category of "light work" even though plaintiff was carrying 70 or 80 pounds at her cooking job when she suffered her injury. (T. 316).  Because the ALJ found at Step 4 of the sequential analysis, that plaintiff was able to return to her past relevant work, the ALJ did not need to use the Medical Vocational Guidelines in her determination.

## VII.   Residual Functional Capacity (RFC)/Pain

### A.   Legal Standards

#### 1.   RFC

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R

---

[3] The ALJ was referring to the plaintiff's hearing before Judge Shearer, who authored the first denial of benefits.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.*  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). When the weight lifted is "very little," a job is still in the light work category when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*  The regulations also state that in order for an individual to be considered capable of performing a "full or wide range" of light work, she must "have the ability to do substantially all of these activities." *Id.*  Finally, if the individual can perform light work, there is a presumption that he or she can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

### 2.    Pain/Subjective Complaints

In making her RFC determination, ALJ Koennecke also rejected plaintiff's claims of subjective limitations and pain.  "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of

the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  *Id.* § 404.1529(c)(3).

### B.   Application

ALJ Koennecke discounted plaintiff's complaints of pain and physical limitations, in part, because these claims were allegedly contrary to the medical evidence of record and contrary to plaintiff's own statements regarding the extent of her daily activities.  ALJ Koennecke then gave great weight to Dr. Campbell, but little weight to Dr. Sane's determination because she had not been treating plaintiff for a long period of time in the beginning of 2005.

ALJ Koennecke's RFC determination is not supported by substantial evidence. First, it is unclear how the ALJ determined that plaintiff could perform the requirements of light work, particularly the lifting requirements.  No examining doctor during the period in question opined that plaintiff could lift up to 20 pounds at all, let alone occasionally.  In order to find that plaintiff could do so, ALJ Koennecke had to discount plaintiff's treating physicians: Dr. Sane, Dr. Khan, and Chiropractor, Dr. Walsemann as well as the agency consultant, Dr. Tiersten.  ALJ Koennecke cited all the "normal" findings by these physicians, while ignoring very important parts of their

reports.  The court also notes that the ALJ also missed important parts of Dr.

Campbell's 2003 reports while giving these reports great weight.

The ALJ may not "pick and choose" from a medical opinion, using only those

parts that are unfavorable to plaintiff in order to find the plaintiff "not credible." *Lynch*

*v. Astrue*, No. 09-CV-623, 2011 WL 2516213, at *8 (W.D.N.Y. June 21, 2011)

(quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)); *Sutherland v.*

*Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) (citing *Lopez v. Sec'y of HHS*,

728 F.2d 148, 150-51 (2d Cir. 1984)). *See also Shaw v. Chater*, 221 F.3d 126, 135 (2d

Cir. 2000) (the ALJ is not entitled to substitute his or her own medical opinion);

*Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (ALJ does not need to reconcile

every conflicting shred of evidence, but may not unreasonably reject all of the medical

evidence in plaintiff's favor).

The rationale for discounting Dr. Sane's opinion – her limited care of plaintiff –

is unsupported because Dr. Sane continued to treat plaintiff and treated her through

the time that she was ultimately found disabled.  Dr. Sane's records from February,

March, May, June, July, and August of 2005 all indicated that plaintiff was having

muscle spasms in her back, and her RFC, dated in August of 2005, stated that plaintiff

should "avoid" lifting, carrying, pushing, pulling walking, and climbing. (T. 523, 525,

527, 529, 535, 537).  All Dr. Sane's reports except the one from in April of 2005 refer

to the presence of muscular spasms. (T. 530).  Dr. Sane's August 2005 report was very

similar to, and consistent with, Dr. Sane's February 2005 RFC.  Dr. Sane's August,

2005 evaluation was given great weight by ALJ Gale, who found that plaintiff could

14

not perform all of the functions necessary for light or sedentary work.

The ALJ discounted Dr. Sane's report because she had only been treating plaintiff for 15 days at the time of the February 2005 report.  However, in giving "great weight" to Dr. Campbell's reports, the ALJ did not mention that there are only two reports from Dr. Campbell in the record.  The record only shows him examining plaintiff on October 16, 2003 and on November 20, 2003. (T. 210, 211-12).  There is no further reference to Dr. Campbell.[4]  Although Dr. Campbell stated on October 16, 2003 that there were really no specific findings to support plaintiff being "out of work," he qualified that statement by saying that plaintiff needed a full work up, and that he was "concerned about possible systemic arthritis or fibromyalgia.[5] (T. 212).  On November 20, 2003, Dr. Campbell stated that "[t]here is nothing specific orthopedic to keep her out of the work place, *but* Ergo's testing could be obtained to see what she could actually do." (T. 210) (emphasis added).  Thus, Dr. Campbell was not making any RFC determination in his report and was deferring to later ergonomic testing.

X-rays of the cervical spine, taken at Dr. Campbell's request showed "[r]adiographic evidence of limitation of flexion and extension consistent with the clinical diagnosis of muscular spasm. (T. 216).  ALJ Koennecke referred to these

---

[4] The ALJ did state that Dr. Campbell should also be given more weight because he is an orthopedic surgeon.  While that may be true, and could certainly apply to plaintiff's back impairment, plaintiff's carpal tunnel impairment is a neurological problem, and as stated herein, the ALJ did not quote all of the relevant portions of Dr. Campbell's reports.

[5] Plaintiff was later diagnosed with myofacial pain syndrome.

15

November 2003 x-rays and stated that they revealed "*only* muscular spasm." (T. 313) (emphasis added).  The court would point out that the Social Security regulations list "spasms" as objective medical evidence of pain. *See* 20 C.F.R. § 404.1529(c)(2); *Bennett v. Astrue*, No. 6:07-CV-780, 2010 WL 3909530, at *8 (N.D.N.Y. Sept. 30, 2010) (citing *Casino-Ortiz v. Astrue*, No. 06 Civ. 155, 2007 WL 2745704, at *11 n.21 (S.D.N.Y. Sept. 21, 2007)).

On December 30, 2004, Dr. Latif performed a "nerve conduction study." (T. 238).  In his report, Dr. Latif stated concluded that plaintiff had "[m]oderate compressive neuropathy of the median motor and sensory nerves across the wrists bilaterally," and that "[t]here is evidence of mild C5-6 root irritation on the right side." (T. 239).  This could explain Dr. Sane's RFC, dated February 2005, limiting plaintiff to lifting less than ten pounds. (T. 237).  ALJ Gale used this nerve conduction study to find that plaintiff's "carpal tunnel" was a "severe impairment." (T. 322).  ALJ Koennecke criticizes plaintiff for stating that she was "unable" to complete the nerve conduction study due to pain and then states that the nerve conduction study showed "compressive neuropathy." (T. 313).  The ALJ then states only that the C5-6 root irritation was "mild." (*Id.*).  ALJ Koennecke never discusses whether plaintiff's compressive neuropathy was a severe impairment or what effect this may have had on her ability to lift during the appropriate time period (a critical factor in light work).

The ALJ discounts Dr. Walsemann's opinion first, because he is a chiropractor and is not an acceptable medical source for purposes of the regulations.  ALJ Koennecke then faults plaintiff for stating that Dr. Walsemann told plaintiff she had a

"herniated disc," when according to the ALJ, the x-ray to which "the claimant" is referring, which was obtained on September 15, 2003, "only showed a vertebral sublaxation of the atlanto axial [sic] complex *at* T2 and T4." (T. 312) (emphasis added). Unfortunately, the ALJ herself misread Dr. Walsemann's report. The report actually states that plaintiff had vertebral sublaxations of the atlanto axial [sic] complex *as well as T2 and T4*."[6] (T. 209) (emphasis added). While ALJ Koennecke is correct in stating that a chiropractor is not an acceptable medical source,[7] if the ALJ cites the chiropractor's report for the purposes of discounting plaintiff's claim of impairment, it should be cited accurately.

ALJ Koennecke found that plaintiff's migraine headaches were not "severe"[8] and thus did not contribute to her RFC determination because "no treating physician has provided any physical limitations pertaining to the claimant's reported symptoms, which include photophobia, phonophobia, and dizziness, [and] . . . [i]n terms of treatment she had only been prescribed medications, and during the period at issue, no

---

[6] Atlantoaxial is actually one word and refers to the atriculation between the first two "cervical vertebrae." http://www.medterms.com/script/main/art.asp?articlekey=12137. A sublaxation is defined as a misalignment. While this court does not suggest any particular severity as the result of this finding, it is clear that the ALJ was incorrect in her statement of the medical evidence. Because she based a great deal of her opinion on her determination that plaintiff did not have substantial "clinical findings," such an error further detracts from the ALJ's conclusions.

[7] Notwithstanding that a chiropractor is not an "acceptable medical source" for purposes of giving controlling weight to such a report, the opinion may still be considered for the purpose of assisting the ALJ in understanding how a claimant's impairments affect his or her ability to work. *See Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (cited by M.J. Peebles in his Report-Rec. T. 359).

[8] Although this was a determination of "severity," the issue is combined with pain because, in rejecting the "severity" of plaintiff's migraine headaches, the ALJ was rejecting the extent of the pain plaintiff was associating with her headaches.

additional testing was ordered by the claimant's physicians." (T. 311).  It is unclear

what treatment, other than "medication," the plaintiff's doctors would have to have

prescribed in order for plaintiff's migraine headaches to be "severe."  The court also

notes that when ALJ Gale found that plaintiff's migraine headaches were "severe," no

other "treatment had been prescribed, and no additional "tests" had been ordered,

specifically for migraine headaches.  Thus, ALJ Koennecke's finding is not supported

by substantial evidence.

ALJ Koennecke referred to Dr. Khan's reports and stated that "[d]espite

acknowledging that her x-rays were basically negative, Dr. Khan proceeded to give the

claimant trigger point injections . . . ." (T. 314).  This is another instance in which ALJ

Koennecke appears to substitute her own judgment for that of the physician.  One of

the factors listed in the evaluation of pain is the type, dosage, effectiveness, and side

effects of any medication taken to relieve symptoms.  It is unclear whether ALJ

Koennecke is attempting to state that Dr. Khan did not prescribe the correct treatment

(an improper substitution of judgment by the ALJ) or whether the ALJ is attempting to

somehow find that, notwithstanding the treatment prescribed, plaintiff's complaints of

pain are not credible.  Either way, this court finds that the ALJ's determination is not

supported by the evidence of record.

The court also notes that on October 19, 2005,[9] plaintiff had a cervical MRI test

performed. (T. 645-46).  The report showed degenerative disc disease from C3-7, but

more prominent from C4-6, with small midline disc protrusions and annulus tears. (T.

---

[9] October 19, 2005 is after the August 11, 2005 date of onset found by ALJ Gale.

18

645).  There was moderate spinal canal narrowing at C4-5, but the neural foramina were patent in all visualized levels. (*Id.*)  Dr. Khan compared the October 19, 2005 radiology report with one from December 14, *2004*. (T. 645-46).  Dr. Khan stated that "[c]omparison to 12/14/04, findings are not significantly changed given differences in technique." (T. 645).  Thus, Dr. Khan's report indicates that the plaintiff's objective findings were the same in 2004 as in 2005, and therefore, ALJ Koennecke's finding that plaintiff's clinical findings during the period in question were "minimal" is not supported by substantial evidence and is directly contradicted by Dr. Khan's statement.

Finally, the ALJ rejected plaintiff's complaints of pain and physical limitations because her "self-reported daily activities reflect a higher level of functioning than she has alleged." (T. 312).  The ALJ cites plaintiff's July 7, 2004 "Function Report." (T. 155-65).  According to ALJ Koennecke's decision, this Report indicates that plaintiff could "tend to her personal needs, cook, clean, and do shopping." (T. 312).  A review of the report shows that plaintiff could take care of her personal needs, but sometimes could not wash her hair, and it was difficult for her to sit down or stand up when using the toilet. (T. 156).  She also stated that although she tried to take her pets for "short walks," her fiancé "does most of the caring for them." (T. 156).  Although she stated that she could cook, she qualified that by stating that she only cooked one meal per day. (T. 157).  She also stated that pain or numbness woke her up at night. (T. 156).  She stated that she took "short" walks and "short" rides and that "some days" she did laundry and cleaning, but that she needed help carrying the laundry or using the

vacuum cleaner. (T. 158).  The ALJ has overstated that activities that plaintiff alleged that she could perform.

Thus, the ALJ's determination that plaintiff had only two severe impairments, and that her impairments would not have prevented her from performing her prior light work between August 28, 2003 and August 10, 2005 is not supported by substantial evidence.

## VIII.  REVERSAL OR REMAND

### A.    Legal Standards

The court must now determine whether remand for additional proceedings or reversal with a remand for calculation of benefits is appropriate.  Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

### B.    Application

In this case, ALJ Koennecke found that plaintiff could return to her previous light work.  Generally, if the ALJ erroneously stops at Step 4 of the disability analysis, the court remands the case for further proceedings to determine, at Step 5, whether the plaintiff could perform other substantial gainful activity.  However, in this case, there is no medical evidence in the record indicating that, during the period between August

28, 2003 and August 10, 2005, plaintiff could perform either the lifting requirements of light work or the dexterity requirements associated with sedentary work.[10]

ALJ Gale ultimately found that plaintiff could not even perform the full range of sedentary work, beginning August 11, 2005.  The medical records regarding plaintiff's carpal tunnel syndrome have been the same since the nerve conduction study was performed in 2004.  Although ALJ Gale relied on Dr. Sane's August 11, 2005[11] evaluation of plaintiff's functional capability, the report is essentially the same as the February 2005 report that was improperly discounted by ALJ Koennecke.  As stated above, Dr. Khan noted that plaintiff's MRI of October 2005 was not significantly different than the December 2004 test, except for the "technique."  It appears that plaintiff's condition, although it may have worsened slightly after the 2003 injury, did not change significantly.  Plaintiff's stated daily activities for the period in question are also not inconsistent with the medical reports.

Because there is no substantial evidence in the record supporting ALJ Koennecke's apparent conclusion that plaintiff's medical condition was significantly

---

[10] ALJ Gale *rejected* the report of a "State Agency disability analyst," who reviewed the evidence in 2006 and found that plaintiff could perform the functions required for light work. (T. 326).  ALJ Gale rejected this opinion because the "analyst" was not a "medical source" and then pointed out that another Disability Analyst concluded in 2007, that plaintiff could not even perform the functions required for sedentary work.(*Id.*)  Thus, there are no "medical" reports, concluding that plaintiff can perform all of the functions of light or sedentary work.

[11] This evaluation would not support an ability to perform light or sedentary work as found by ALJ Gale.  The court notes that the August 2005 report is even more restrictive than that completed in February of 2005, but a review of the February report also shows that plaintiff could not lift more than 10 pounds or sit for more than 30 minutes at a time. (T. 237).  The court does note that the RFC portion of the February 2005 report states that it is "To be filled by PT."  (*Id.*)  Even if the physical therapist filled out the RFC portion of the report, it is clearly signed by Dr. Sane.  Therefore, it is appears that Dr. Sane reviewed the RFC and agreed with it.

better before August 11, 2005, there would be no purpose in remanding for further consideration of the evidence. Thus, this court will recommend reversal of the Commissioner's decision and a remand for calculation of benefits.[12]

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the Commissioner's decision be **REVERSED**, and this action be **REMANDED FOR CALCULATION OF BENEFITS FOR THE CLOSED PERIOD IN QUESTION: AUGUST 28, 2003 UNTIL AUGUST 10, 2005**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 12, 2011

_____
**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[12] Plaintiff's counsel argues that the court should also base its decision on Social Security Ruling 83-20, which states that for disabilities of traumatic origin, the onset date is the date of the injury if the individual is expected to be unable to engage in substantial gainful activity for at least 12 months. This court need not reach this argument because the court is recommending reversal for calculation of benefits for the closed period in question based upon ALJ Koennecke's failure to support her decision with substantial evidence.

22